DUANE H. NASH v. THE FARMERS AND MERCHANTS BANK.

No. 91.

1. PUBLIC LANDS—*Power of Congress.* The congress of the United States is vested with the absolute power to dispose of the public lands belonging to the United States and to prescribe the conditions upon which the title thereto shall be conveyed.

2. —— *Timber Claim Exempt.* Land acquired from the United States under the timber-culture act cannot be seized, against the will of the owner, and sold on execution for the satisfaction of a debt contracted prior to the issuing of the final certificate therefor.

MEMORANDUM.— Error from Norton district court; A. C. T. GEIGER, judge. Action by The Farmers and Merchants Bank, of Hill City, Kan., against Duane

H. Nash, to quiet title. Judgment for plaintiff. Defendant brings the case to this court. Affirmed. The opinion herein, filed May 5, 1896, states the material facts.

L. H. *Wilder*, for plaintiff in error.

H. J. *Harwi*, for defendant in error.

The opinion of the court was delivered by

GARVER, J. : The·parties to this action both claim title to the north half of the northwest quarter and the west half of the northeast quarter of section 27, in township 4 south, range 22 west, in Norton county. The plaintiff in error claims by virtue of a sheriff's deed executed to him by the sheriff of said county pursuant to a certain judgment and execution issued in an action pending in the district court of said county wherein Duane H. Nash was plaintiff and one E. Graham was defendant, and the defendant in error claims title by a direct conveyance from said Graham. Title to the land was acquired by Graham June 25, 1890, from the United States, under what is known as the timber-culture act. The debt for which the land was sold and the sheriff's deed executed was contracted prior to the issuing of the final certificate for said land to Graham. The only question is, whether the land is liable to be taken for the satisfaction of such debt.

In making provision for the disposition of public lands by "An act to amend an act entitled 'An act to encourage the growth of timber on the western prairies,'" approved June 14, 1878, congress enacted :

"SEC. 4. That no land acquired under the provisions of this act shall, in any event, become liable for the satisfaction of any debt or debts contracted prior to the issuing of the final certificate therefor."

The language of the above section seems sufficiently clear and specific, in itself, to settle the question raised in this case. It is, however, contended by counsel for plaintiff in error that congress has no power to attach any such conditions to the transfer of title to public lands; that, when transferred, an absolute estate in fee simple became vested in Graham, which, by the operation of the laws of the state, was subject to the lien of the judgment. Hence, it is argued that such attempted exemption must be held to be invalid, or construed to apply to the land only prior to the time when the United Stated parted with its title thereto.

With neither of these views can we agree. By the constitution of the United States (art. 4, § 3) it is provided:

"The congress shall have power to dispose of and make all needful rules and regulations respecting the territory and other property belonging to the United States; and nothing in this constitution shall be so construed as to prejudice any claims of the United States, or of any particular state."

In the act for the admission of Kansas into the Union, certain rights in the public lands were conferred upon the state,

"on the condition that the people of Kansas shall provide by an ordinance, irrevocable without the consent of the United States, that said state shall never interfere with the primary disposal of the soil within the same by the United States, or with any regulations congress may find necessary for securing the title in said soil to *bona fide* purchasers thereof."

These conditions were formally accepted by the state by an act approved January 20, 1862, which reads in part as follows:

"It is hereby ordained that this state shall never interfere with the primary disposal of the soil within

the same by the United States, or with any regulations congress may find necessary for securing the title to said soil to *bona fide* purchasers thereof."

By the foregoing provisions, congress is vested with the absolute right of prescribing the conditions upon which title to any of the public lands shall be conveyed. The necessity and propriety of the regulations which shall apply, or the conditions which shall be imposed in any particular case, rest entirely in the discretion of congress. When such discretion is exercised in a particular manner it becomes the supreme law of the land. A similar exemption from liability for pre-existing debts attached to lands acquired under the homestead act. By such provisions, congress sought to encourage men to settle upon and improve the public domain, with the assurance that they would be secure therein against previously-contracted debts. It is not a restriction upon the use which the landowner may make of the land so acquired, nor a limitation of his right of disposition. He may still voluntarily appropriate the land to the payment of such debts. (*Watkins v. Voorhees*, 14 Kan. 328.) But he cannot be deprived of it against his will by the seizure of it for the satisfaction of a debt contracted prior to the issuance to him of the final certificate. That this exemption from pre-existing debts of lands acquired under the homestead and timber-culture acts is a valid provision and binding upon the state in which the lands are situated, we think admits of no doubt. Such lands are, to that extent, excepted from the operation of the general laws of the state. (*Brown v. Kennedy*, 12 Colo. 235 ; *Dickerson v. Cuthburth*, 56 Mo. App. 647 ; *Baldwin v. Boyd*, 18 Neb. 444 ; *Seymour v. Sanders*, 3 Dill. 437 ; *Russell v. Lowth*, 21 Minn. 167 ; *Gile v. Hallock*, 33 Wis. 523 ; *Miller v. Little*, 47 Cal. 348.)

It follows, therefore, that the judgment in favor of Nash did not become a lien upon the land acquired by Graham under the timber-culture act; that the deed executed by him to the defendant in error conveyed a clear and unincumbered title thereto; and that the subsequent levy upon the sale of the same under said judgment vested no title or interest in Nash. The only effect of such proceedings was to create a cloud upon the title of the defendant in error which it was entitled to have removed.

The judgment will be affirmed.

All the Judges concurring.