## BRAKE v. BLAIN.

No. 3066.   Opinion Filed April 13, 1915.

Rehearing Denied December 7, 1915.

(153 Pac. 158.)

1.    **PUBLIC LANDS—Issuance of Final Certificate—Title of Entry-man.**  A certificate of final payment from the register of the government land office vests the entryman with complete equitable title to the land therein described, voidable by the Land Depart ment only for fraud or error at any time before a patent issues thereupon.

2.    **PUBLIC LANDS—Contract of Sale—Construction—Remedy of Purchaser.**  Where A., the owner of such certificate, evidencing the equitable title to 160 acres of land in C. county, agrees in writing with B., the owner in fee of a tract of land in P. county, to trade land with him, A. to assume a mortgage of $2,300 on B.'s land. conditioned that B. is satisfied with the land in C. county, and providing that if the deed to that land is not good and the final proof of A. is not passed on favorably by the government, he will relinquish on said land in favor of B., and where B. there-after inspects and is satisfied to trade and they subsequently agree in writing that A. is not only to assume said mortgage, but to pay B. $1,000 in cash and make other deferred payments, and that all papers are to be left in escrow until such time as A. shall make a deed to his land in C. county to B., **held,** that the two instruments in writing were one contract, and should be construed together, and held by the court to mean that in the event A.'s final proof was not passed on favorably by the govern-ment B.'s sole remedy was to file on the land.

3.    **CONTRACTS — Construction — Separate Instruments.**  Although not executed at the same time, where two written instruments refer to the same subject-matter and on their face show that each was executed as a means of carrying out the intent of the other, both should be construed as one contract.

(Syllabus by the Court.)

*Error from Superior Court, Pottawatomie County;*
*Geo. C. Abernathy, Judge.*

Action by W. S. Blain against J. H. Brake. Judgment for plaintiff, and defendant brings error. Reversed and dismissed.

*J. H. Miley* and *J. H. Woods*, for plaintiff in error.

*W. S. Pendleton*, for defendant in error.

TURNER, J. On September 23, 1909, J. H. Brake, plaintiff in error, defendant below, was the owner of a homestead filing consisting of 160 acres of land in Cimarron county, Okla., by virtue of a certificate from the government land office of that date, which reads:

"It is hereby certified that in pursuance of law, James H. Brake, residing at Bertrand, Cimarron county, state of Oklahoma, on this day purchased of the register of this office, the S. E. ¼ of section No. 33, in township No. 1, range 4 east Cimarron, the principal meridian, Oklahoma, containing 160 acres, at the rate of one dolllar and twenty-five cents per acre, amounting to two hundred dollars, for which the said James H. Brake, has made full payment as required by law. Now therefore be it known that, on presentation of this certificate to the Commissioner of the General Land Office, the said James H. Brake shall be entitled to receive a patent for the above lot described. GEORGE D. OWEN, *Register*."

W. S. Blain, defendant in error, plaintiff below, lived in Pottawatomie county and owned a farm upon which there was a mortgage of $2,300. Before he saw Brake's farm, they, about the middle of October, 1909, made an agreement in writing which reads:

"This agreement made between J. H. Brake and W. S. Blain, both of Shawnee, Oklahoma. W. S. Blain agrees to trade the northeast one-quarter (¼), section thirty-three (33), township ten (10) range three (3) east in Pottawatomie county, Oklahoma, for the southeast quarter (¼), section thirty-three (33), township one (1), range four (4) east in Cimarron county, Oklahoma, as

follows:   J. H. Brake assumes mortgage now resting on land in Pottawatomie county of twenty-three hundred ($2,300) dollars, and deeds his land named in Cimarron county.   If, however, the deed is not good and the final proof of the said J. H. Brake is not passed on favorably by the government, then he agrees to relinquish on the land named in Cimarron county in favor of the said W. S. Blain.   The above trade is conditioned on W. S. Blain being satisfied with the land in Cimarron county, after he visits and inspects the same.

"W. S. BLAIN,<br>"J. H. BRAKE.

"Witness:   J. A. NAIL."

Thereafter Blain went to Cimarron county and looked at Brake's farm, and upon his return they, considering Blake's homestead to be worth $1,000 and Blain's land to be worth $6,400, on November 1, 1909, made this agreement:

"This agreement made by and between W. S. Blain, party of the first part, and J. H. Brake, party of the second part.   Said W. S. Blain agrees to trade his place, to-wit: northeast ¼, section thirty-three (33), township ten (10) range three (3) to the said J. H. Brake for his place, to-wit: southeast quarter (¼) of section thirty-three, township one (1), range four (4).   Said J. H. Brake assumes a mortgage of $2,300.00, and agrees to pay $1,000.00 in cash, $1,000.00 in one year, bearing five per cent. interest and $1,100.00 in three years, interest five per cent.   All papers to be left in Shawnee National Bank in escrow until contract is fulfilled.   Deposit of $1,000.00 is to be made by January 1st, 1910.   Deed to be made to W. S. Blain by J. H. Brake as soon as patent is issued.

"W. S. BLAIN,<br>"J. H. BRAKE.

"Witnesses:
  "JNO. W. JONES.
  "ROBT. STRONG."

And on the same day they went to the bank, whereupon Blain and wife executed a deed to his land to Brake, wherein it was stipulated that the same was to have and to hold free and clear of all liens and incumbrances except the $2,300 mortgage mentioned in the contract, and placed the same in escrow in the bank. At the same time Blain took back from Brake a mortgage on the land, securing the deferred payments mentioned in the contract, which said notes and mortgages were also placed there in escrow until such time as Brake should fulfill his part of the contract by deeding Blain his land in Cimarron county. Thereafter Brake paid Blain the $1,000 mentioned in the contract as due January 1, 1910, after which they modified that part of the contract, requiring Brake to deed his land to Blain "as soon as patent issues," by a parol agreement, in effect that Brake and wife would make, execute, and deliver to Blain their deed to the Cimarron county land at once, which they did, after which he put them in possession, and the contract, *supra*, was fully executed by delivery of all the papers in escrow. And thereafter when Brake's final proof was rejected by the Land Department and his said certificate was canceled and Blain refused to file on the land, Blain stood on the contract and sued Brake for $1,000, the recited consideration in said deed of Brake and wife, upon the theory that the contract was executed and that the consideration for said deed had failed. Upon this state of facts the court held that it had failed. and directed a verdict in favor of Blain and against Brake for $1,000, together with interest from November 1, 1909, and Brake brings the case here.

There is no merit in Brake's contention that the agreement between him and Blain was in effect a sale or

contract for the alienation of his land by him as an entry-man, and hence is void as against public policy. This for the reason that his certificate at the time the sale was made vested in him the equitable title to the land, which he had a right to sell and convey. 32 Cyc. 1080, says:

"One who has done everything which is necessary in order to entitle him to receive a patent for public land has, even before the patent is actually issued by the Land Department, a complete equitable estate in the land which he can sell and convey, mortgage or lease, and *a fortiori* a contract to convey land before the issuance of a patent, but after final proof has been made and the land paid for, is not illegal. A conveyance of the land and delivery of the certificate of final payment is sufficient evidence of an assignment of the certificate and all rights acquired thereby."

In *United States v. Detroit Timber & Lumber Co.,* 131 Fed. 668, 67 C. C. A. 1, in the syllabus, it is said:

"Receivers' final receipts are notice to purchasers of the equitable title they evidence that they are voidable by the Land Department for fraud or error at any time before the patents issue upon them, but they are not notice that the equitable titles they disclose were procured by fraud, perjury, or irregularity. On the other hand, they are *prima facie* evidence that the lands they describe were honestly and regularly entered, and that the entrymen who obtained them are entitled to the patents for the land."

See, also, *Parsons v. Venzke,* 164 U. S. 98, 17 Sup. Ct. 27, 41 L. Ed. 360; *Peyton v. Desmond,* 129 Fed. 1, 63 C. C. A. 651; *Fariss v. Deming Inv. Co.,* 5 Okla. 496, 49 Pac. 926; *Gourley v. Countryman,* 18 Okla. 220, 90 Pac. 427; *Stark v. Fallis,* 26 Okla. 357, 109 Pac. 66.

This is in keeping with the holding of the trial court, and the court so far was right. But the court erred in directing a verdict for plaintiff. This for the reason that

Brake lived up to the full measure of his contract when he made, executed, and delivered his deed pursuant thereto to Blain, conveying to him his equitable title. The two agreements in writing, *supra*, constitute one contract, being supplementary one to the other, and should be construed together. We say this for the reason that, although not executed at the same time, they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the intent of the other. *Canadian Coal Co. v. Lynch*, 28 Okla. 585, 115 Pac. 466. It will be observed that from the agreement of November 1st, it could not be told where any of the land lay, or what the agreement was between the parties in the event Brake's final proof was not passed on favorably by the government, except by reference to the former. Brake's contention was that both agreements should be construed together as one contract, and, in effect, that when he passed his deed to Blain he had lived up to the full measure thereof, and that, as the government subsequently canceled his filing certificate, the contract was, as specified in the first agreement, that Blain was then to file on the land. His contention should have been sustained, but the court was led into error by holding, in effect, that the agreement of November 1, 1909, was all the contract existing between the parties.

We are therefore of opinion that the contract provided what Blain's sole remedy should be in the event Brake's final proof was not passed on favorably by the government, and hence Blain's sole remedy in that event was to file upon the land, and that this action to recover for a partial failure of consideration will not lie. The case is therefore reversed and dismissed.

All the Justices concur.